In re CRYSEN/MONTENAY ENERGY
COMPANY, Debtor.

CRYSEN/MONTENAY ENERGY
COMPANY, Debtor–
Appellant,

v.

E & C TRADING LTD., Appellee.

No. 93 Civ. 5372 (PKL).

United States District Court,
S.D. New York.

March 28, 1994.

Becker, Glynn, Melamed & Muffy (Richard N. Chassin, Matthew W. Woodruff, of counsel), New York City, for debtor-appellant.

Shermet, Jakabovics & Bernstein (Milton Shermet, of counsel), White Plains, NY, for appellee.

## OPINION AND ORDER

LEISURE, District Judge.

This is an appeal by the debtor-in-possession, Crysen/Montenay Energy Company ("Crysen" or "Appellant") from an Opinion of the United States Bankruptcy Court for the Southern District of New York, issued April 20, 1993 ("Opinion"), and a corresponding Order, dated May 14, 1993 ("Order"). The Opinion and corresponding Order dismissed with prejudice, the adversary proceeding of Crysen against E & C Trading Ltd. ("E & C" or "Appellee"). Crysen's adversary proceeding was dismissed by the bankruptcy court for failure to prosecute pursuant to Local Bankruptcy Rule 21(a) and Fed. R.Civ.P. 41(b), and for failure to effectuate timely service pursuant to Fed.R.Civ.P. 4(i) and 4(j), thus rendering the eventual service on E & C time barred.

## BACKGROUND

The facts as set forth herein, reflect the findings of the Honorable Cornelius Blackshear, United States Bankruptcy Judge, Southern District of New York, as delineated in his Opinion of April 20, 1993. Crysen, a partnership organized under the laws of the State of New York, filed a petition for reorganization under Chapter 11 of the Bankruptcy Code on June 27, 1986. Prior to Crysen's seeking protection in Chapter 11 bankruptcy, Crysen and E & C, a Swiss corporation, entered into an agreement whereby E & C would purchase high sulfur petroleum coke from plaintiff. The agreement was entered into on or about February 11, 1986. Brief of Debtor–Appellant ("Crysen Brief") at 4. Crysen's complaint alleges that Defendant breached the contract in or before March of 1986, by allegedly failing to purchase the agreed upon amount of petroleum coke. Subsequently, on September 29, 1989, Crysen initiated an adversary proceeding against E & C by the filing of a summons and complaint in United States Bankruptcy Court for the Southern District of New York.

Crysen first attempted to serve process on E & C on November 3, 1989, four days after filing the complaint, by serving a summons and complaint on Eli Epstein, an individual whom Crysen believed to be an agent of E & C. Appendix submitted in support of Crysen Brief ("Appendix") at 157. E & C, however, claims it had no affiliation with Epstein at the time of service. *Id.*

On December 6, 1989, E & C moved for an Order dismissing the complaint pursuant to Fed.R.Civ.P. 12(b). E & C's motion was based in part on the following arguments: (1) that as a foreign corporation, E & C's was not subject to the bankruptcy court's jurisdiction; and (2) that service in the action was improper pursuant to Fed.R.Civ.P. 4(d)(3) and Bankruptcy Rule 7004. A hearing on E & C's motion was held on April 3, 1990. In support of E & C's motion, Epstein submitted two affidavits to the bankruptcy court, the substance of which stating that he, Epstein, was not an agent for E & C at the time of service.[1] On August 23, 1990, the bankruptcy court denied, without prejudice, E & C's motion as to the jurisdictional issue. In its Opinion of August 23, 1990, the bankruptcy court ordered Crysen to conduct discovery to determine Epstein's agency status at the time of service. Crysen did not make arrangements to depose Epstein in compliance with the bankruptcy Judge's Order, and the issue regarding Epstein's agency Status was never resolved.

Instead of resolving the issue surrounding the first attempted service, or attempting to serve another individual who was an agent of E & C, Crysen chose to perfect service by way of Letters Rogatory. Crysen commenced its second attempt to serve E & C one year and two months later. On October 16, 1991, Crysen applied to the bankruptcy court for issuance of Letters Rogatory which

---

1. The first affidavit submitted November 27, 1989 stated in relevant part that Epstein was an officer of Aminco Resources Inc. and that he, Epstein, had "on occasion in the past acted as a broker for the defendant and other European and American Companies." Appendix at 157 n. 1. The affidavit goes on to state however, that Epstein severed his relationship with E & C in January 1987. *Id.* The second affidavit, dated March 27, 1990, stated that Epstein was employed by American International Ore Corporation ("AIOC") and that he was not E & G's broker, but that AIOC was E & G's broker. This second affidavit states that Epstein has had no legal relationship with E & C since the end of 1986.

would permit service of process on E & C in Switzerland. On October 17, 1991 the bankruptcy court granted Crysen's application for issuance of Letters Rogatory to serve E & C in Switzerland. Seven months after Crysen's initial ex-parte application for Letters Rogatory, E & C was successfully served.

On June 22, 1992, E & C brought a second motion to dismiss the adversary proceeding on three grounds: (1) Crysen neglected to prosecute the suit, citing Local Bankruptcy Rule 21, which incorporates Fed.R.Civ.P. 41; (2) that the first service was improper because Epstein had no relationship with the defendant for two years prior to the first service; and (3) that the service by Letters Rogatory was completed after the running of the four year statute of limitations applicable under § 2–725 of the New York Uniform Commercial Code ("UCC").

At oral argument before the bankruptcy court, appellant was unable to provide the bankruptcy court with a satisfactory explanation for its failure to depose Epstein or the subsequent twenty-one (21) month delay in effectuating service. Accordingly, the bankruptcy court granted E & C's motion to dismiss, finding: (1) that Crysen was not diligent in prosecuting its cause of action, and accordingly had abandoned its cause of action pursuant to Local Bankruptcy Rule 21 and Fed.R.Civ.P. 41; (2) that Crysen had not properly effectuated service on defendant pursuant to Fed.R.Civ.P. 4(i) and 4(j) and had not shown "good cause" for the delays; and (3) that the service via Letters Rogatory which was eventually perfected in May of 1992, was not effected until after the running of the four year statute of limitations pursuant to N.Y.U.C.C. § 2–725 (McKinney 1982). *See* Opinion at 550–51.

Crysen has raised the following objections to the Opinion and Order: (1) that the bankruptcy court abused its discretion in ruling that Crysen had failed to prosecute its claim diligently; (2) that the bankruptcy court erred in ruling that Crysen's service of process on E & C pursuant to Letters Rogatory was untimely; and (3) that the bankruptcy court erred in ruling that Crysen's adversary proceeding, commenced under Bankruptcy Rule 7003, was time-barred under the New York State's four year statute of limitations applicable to breach of contract actions.

## DISCUSSION

This appeal of the bankruptcy court's Opinion and Order comes before this Court pursuant to 28 U.S.C. § 158, and is thus taken in the same manner as an appeal from the district court. 28 U.S.C. § 158(c).

### A. Standard of Review

The bankruptcy court's findings of fact may not be set aside unless they are shown to be clearly erroneous. Fed.R.Bank.P. 8013; *In re Manville Forest Products Corp.,* 896 F.2d 1384, 1388 (2d Cir.1990) ("We must accept the bankruptcy court's findings of fact unless clearly erroneous.... We will reverse the bankruptcy court only if we are 'left with the definite and firm conviction that a mistake has been committed.'") (citing, *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

A bankruptcy court's legal conclusions are generally subject to a *de novo* review by the reviewing court. *See In re Maxwell Newspapers, Inc.,* 981 F.2d 85, 89 (2d Cir.1992) (citations omitted); *see also, In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 988–89 (2d Cir.1990), *cert. denied sub nom., Air Line Pilots Ass'n, Int'l v. Shugrue,* — U.S. —, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991). The standard of review differs, however, when the issue involves the bankruptcy court's discretionary control over the management of its own docket. In such circumstances the scope of review is extremely narrow. *In re United Merchants and Mfrs., Inc.,* 126 B.R. 149, 150 (S.D.N.Y.1991) (citing *Theilmann v. Rutland Hospital Inc.,* 455 F.2d 853, 855 (2d Cir.1972)). In reviewing a trial court's order of dismissal, the reviewing court must apply the narrow "abuse of discretion" standard. *See Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 43 (2d Cir.1982) ("[T]he scope of review of an order of dismissal is confined solely to whether the trial court has exercised its inherent power to manage its affairs within the permissible range of its discretion."); *Theilmann,* 455

**550**

F.2d at 855. The standard to be applied is thus, "not what this Court would have done under the same circumstances, but whether, in light of the record as a whole, the bankruptcy court's decision was reasonable." *In re United Merchants,* 126 B.R. at 150.

### B. Failure to Prosecute

■ Upon thorough review of the record, this Court has determined that the bankruptcy court correctly assessed the appellant's dilatoriness, and the resulting prejudice to appellee, the court did not abuse its discretion in dismissing the adversary proceeding for failure to prosecute.

■ It is well established that a trial court has the power to dismiss an action for failure to prosecute and that such a dismissal will be reviewed only for abuse of discretion. *Nita v. Conn. Dep't of Envtl. Protection,* 16 F.3d 482, 485 (2d Cir.1994); *See, e.g., Link v. Wabash Railroad Co.,* 370 U.S. 626, 632–33, 82 S.Ct. 1386, 1389–90, 8 L.Ed.2d 734 (1962); *Peart v. City of New York,* 992 F.2d 458, 461 (2d Cir.1993); *Alvarez v. Simmons Market Research Bureau, Inc.,* 839 F.2d 930, 932 (2d Cir.1988); *Harding v. Federal Reserve Bank,* 707 F.2d 46, 50 (2d Cir.1983); *Lyell Theatre Corp.,* 682 F.2d at 42–43. A trial court's historic power to dismiss an action for want of prosecution is codified in Fed.R.Civ.P. 41(b). Bankruptcy Rule 7041 incorporates by reference Fed.R.Civ.P. 41. Rule 41(b) of the Federal Rules of Civil Procedure provides in pertinent part:

> (b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant.... a dismissal under this subdivision ... operates as an adjudication upon the merits.[2]

■ Dismissal of an action for failure to prosecute is " 'a harsh remedy to be utilized only in extreme situations,' " *Romandette v. Weetabix Co.,* 807 F.2d 309, 312 (2d Cir.1986) (quoting *Theilmann,* 455 F.2d at 855 (per curiam)). However, this sanction may be necessary to allow courts "to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief." *Link,* 370 U.S. at 630, 82 S.Ct. at 1388.

■ Dismissal for failure to prosecute is an appropriate remedy where a plaintiff has shown no due diligence in prosecuting the case. *See Lyell Theatre Corp.,* 682 F.2d at 42–43. In numerous instances, Courts in this Circuit have dismissed actions for failure to prosecute where the plaintiff has failed to take any steps, after filing a complaint, to prosecute the action, or where the plaintiff has failed to take any action over a length of time. *See e.g., Chira v. Lockheed Aircraft Corp.,* 634 F.2d 664 (2d Cir.1980) (delay of six months in completing discovery and proceeding to trial justifies dismissal under Rule 41(b)); *Ali v. A & G Co.,* 542 F.2d 595, 596 (2d Cir.1976) (affirming dismissal with prejudice where counsel failed to appear for trial despite no showing of delay); *West v. City of New York,* 130 F.R.D. 522, 525 (S.D.N.Y. 1990) (plaintiff's nineteen-month delay without taking any specific and concrete action was sufficient cause for dismissal with prejudice under Rule 41(b)). Furthermore, courts have also dismissed actions where plaintiff's counsel has disregarded scheduling orders of the court. *See Peart,* 992 F.2d 458, 461 (2d Cir.1993).

■ In determining whether there has been an abuse of discretion, this Court examines principally "[1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the [bankruptcy] judge has 'take[n] care to "strik[e] the balance between alleviat-

---

**2.** Additionally, Local Bankruptcy Rule 21(a) states in pertinent part:

> Failure of counsel for any party to appear before the court at a conference, or to complete the necessary preparations, or to be prepared to proceed to trial at the time set, may be considered an abandonment of the adver-

sary proceeding or contested matter or failure to prosecute or defend diligently, and an appropriate order may be entered against the defaulting party either with respect to a specific issue or on the entire adversary proceeding or contested matter.

ing court calendar congestion and protecting a party's right to due process and a fair chance to be heard...." ', and [5] whether the judge has adequately assessed the efficacy of lesser sanctions." *Alvarez v. Simmons Market Research Bureau, Inc.*, 839 F.2d at 932 (brackets in original) (quoting *Harding v. Federal Reserve Bank*, 707 F.2d at 50 (quoting *Merker v. Rice*, 649 F.2d 171, 174 (2d Cir.1981))); *see also Minnette v. Time Warner*, 997 F.2d at 1027; *Peart*, 992 F.2d at 461. Generally, no one factor is dispositive, *Nita*, 16 F.3d at 485, but instead, the case must be assessed "in light of the record as a whole," *Alvarez*, 839 F.2d at 932.

■ In the instant action, this Court finds that the record as a whole reflects a lack of diligence on behalf of appellant and correspondingly actual prejudice suffered by defendant-Appellee. While the actual period of delay is not necessarily dispositive in deciding such a motion, it is an important factor, and must be considered in light of all the facts and circumstances. *Preston v. Mendlinger*, 83 F.R.D. 198, 200 (S.D.N.Y.1979). As discussed above, dismissals based in part on such a lengthy period of inactivity have been found to be appropriate. *See e.g., Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664 (2d Cir.1980); *M & H Cosmetics, Inc. v. Alfin Fragrances, Inc.*, 102 F.R.D. 265, 267 (E.D.N.Y.1984). Additionally, this Court has held that "[u]nreasonable delay in serving process may ... constitute a failure to prosecute under rule 41(b)" *Krank v. Express Funding Corp.*, 133 F.R.D. 14, 18 (S.D.N.Y. 1990), (citing *Saylor v. Lindsley*, 71 F.R.D. 380, 383 (S.D.N.Y.1976)).

On August 23, 1990, the bankruptcy court denied without prejudice E & C's motion to dismiss for failure to serve, and ordered Crysen to depose Epstein.[3] It was not until October 17, 1991 that Crysen applied to the bankruptcy court to proceed via Letters Rogatory. Actual service was not completed until May, 1992, two and a half years from the date of filing. In that time Crysen claims that it was confirming E & C's address in Switzerland, and preparing the groundwork for serving via Letters Rogatory. *See* Appendix at 136–140. In short, Crysen offers no legitimate excuse for this initial 14 month delay. Looking at the record as a whole, this Court has determined that the bankruptcy court properly concluded that this 14 month delay prior to application for issuance of Letters Rogatory demonstrated a failure by Crysen to prosecute its claim diligently.[4]

Moreover, Crysen's 14 month delay is even more troublesome in light of the fact that the delays have caused E & C to suffer actual prejudice, namely, the September 1992 death of Mr. Michael Floersheim, former president and chairman of E & C, who could have testified in the matter. "It has often been held that a defendant is prejudiced where witnesses have died or become unavailable" during the time between the filing of the complaint and the service of process. *Camotex, S.R.L. v. Hunt*, 741 F.Supp. 1086, 1094 (S.D.N.Y.1990) (citing *Saylor v. Lindsley*, 71 F.R.D. 380, 385 (S.D.N.Y.1976), aff'd, 623 F.2d 230 (2d Cir.1980)). *See generally Walker v. Armco Steel Corp.*, 446 U.S. 740, 751, 100 S.Ct. 1978, 1985, 64 L.Ed.2d 659 (1980) (stating that "after a certain period of time it is unfair to require the defendant to attempt to piece together his defense to an old claim."). Accordingly, the record reflects that the bankruptcy court accurately assessed appellant's dilatory prosecution, and the resulting prejudice on the defendant-appellee.

Based upon the finding that the aforementioned delays were protracted and the specific finding that actual prejudice to appellee resulted, this Court is compelled to reach the same conclusion as the bankruptcy court and affirm the bankruptcy court's order dismissing the instant adversary proceeding.

As a Court sitting in a district with ten judicial vacancies, this Court is well aware

---

3. Crysen disregarded the court's order to depose Epstein. A party acts at his own peril when he disregards an order of the court and chooses not to follow a court's explicit direction suggesting that a deposition be taken. *See also, Peart*, 992 F.2d at 461; *Chira*, 634 F.2d at 667.

4. It should be noted that appellant was first made aware that service on Epstein may have been defective in December of 1989, when appellee first moved to dismiss.

that "[b]urgeoning filings and crowded calendars have shorn courts of the luxury of tolerating procrastination." *Chira v. Lockheed,* 634 F.2d at 668. Accordingly, this Court agrees with the bankruptcy court's assessment that a two and a half year delay between the time of filing and the time of service, included in which was a fourteen month stretch of inactivity, demonstrates dilatoriness on the part of appellant. Accordingly, this Court affirms the bankruptcy courts's dismissal for failure to prosecute.

## C. Failure to Serve Timely

In its Opinion of April 22, 1993, the bankruptcy court also held that Crysen had not effectuated timely service on defendant pursuant to Fed.R.Civ.P. 4(i) and 4(j), and had failed to show "good cause" for the delays.[5] Upon a *de novo* review of the record, this Court agrees with the findings of the bankruptcy court and accordingly affirms its decision regarding appellants failure to serve properly.

Fed.R.Civ.P. 4(j) provides in relevant part:

Summons: Time Limit for Service. If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice.... This subdivision shall not apply to service in a foreign country pursuant to subdivision (i) of this rule.

Rule 4(j) was adopted by Congress as part of the Federal Rules of Civil Procedure Amendments Act of 1982 (the "Act"), Pub.L.No. 97–462, 96 Stat. 2527, on January 12, 1983, and became effective on February 26, 1983. *In re Southold Dev. Corp.,* 148 B.R. 726, 729

(E.D.N.Y.1992). The 120–day service requirement of Rule 4(j) was adopted in order to encourage the prompt movement of civil actions in the federal courts. *Id.* at 729 (citing *Quann v. Whitegate–Edgewater,* 112 F.R.D. 649, 661 (D.Md.1986) and 2 Moore's Federal Practice, ¶ 4.46 at 4–433 n. 8 (1990)).

Prior to the adoption of the Rule 4(j) 120–day requirement, courts applied a "flexible due diligence" standard to the question of timely service of process. *In re Southold Dev. Corp.,* 148 B.R. at 729 (citing *Montalbano v. Easco Hand Tools, Inc.,* 766 F.2d 737, 740 n. 6 (2d Cir.1985)). Rule 4(j) explicitly, by its terms, does not impose the 120–day time constraint to service of parties made pursuant to Fed.R.Civ.P. 4(i). Accordingly, at least one court in this Circuit has applied the aforementioned "flexible due diligence" standard in lieu of the 120–day deadline, to a case involving service on defendants in foreign countries. *In re Southold Dev. Corp.,* 148 B.R. at 730 (holding a plaintiff not subject to the 120 day time limit is still subject to a "flexible due diligence" standard for a determination of timely service of process").

The *Southold* court reasoned that even though the 120–day deadline did not apply to service on defendants in foreign countries, the rationale behind Fed.R.Civ.P. 4, *i.e.,* providing for the prompt movement of civil actions in the federal courts, is still be applicable. The application of the "flexible due diligence" standard to cases such as this, reflects the basic notion that in the interest of due process and judicial efficiency, defendants should be served in a timely manner. *See In re Horob,* 54 B.R. 693, 697 (Bankr. D.N.D.1985) (stating that timely service upon defendant in an action in bankruptcy court "comports with notions of fair play and substantial justice"). Upon making such a de-

---

**5.** Under the recent amendments to the Federal Rules of Civil Procedure, Rule 4(i) and Rule 4(j) have been recodified as Rule 4(f) and 4(m) respectively. While the amendments change the wording slightly, the substance of these two Rules remains unchanged. In considering this appeal which was pending when the new rules took effect, the Court finds it just and appropriate to apply the version of the Rules in effect at the time the papers were filed. The bankruptcy court's decision as well as the appellant's and appellee's briefs were submitted prior to the effective date of the amendments. Thus counsel were familiar with the language and standards of the unamended rules, and tailored their arguments before this Court accordingly. Moreover, it would be unfair to charge a party with knowledge of a rule not in effect at the time of filing. *See also Knipe v. Skinner,* 19 F.3d 72, 78 (2d Cir.1994) (discussing application of amended Rule 11).

termination, the *Southold* court remanded the action to the bankruptcy court for determination of whether the plaintiff had acted with appropriate due diligence. *Id. See In re Horob,* 54 B.R. at 696 (finding that in a bankruptcy action, "plaintiffs are required to use diligence in making service of process, and courts will dismiss action where there is substantial delay between the filing of the complaint and service of the summons").

The mere fact that Congress exempted foreign service from the 120–day requirement, does not give litigants an unlimited time in which to complete service. Accordingly, this Court agrees with the determination made by the *Southold* court and accordingly finds the bankruptcy court's application of the "flexible due diligence" standard to have been entirely appropriate and legally proper.

Courts have excused delays in service of process upon a showing by the serving party that there exists "good cause" for the delay. In doing so, courts have examined whether the delay was the "result of mere inadvertence," or whether there had been a "reasonable effort" made to effect service. *Geller v. Newell,* 602 F.Supp. 501, 502 (S.D.N.Y.1984) (finding "good cause" where plaintiff made extensive inquiries to locate and serve defendant and in fact effected service a mere 14 days after the deadline). *See Timmons v. New York State Dep't of Corrections,* 1993 WL 118517, *4, 1993 U.S.Dist. LEXIS 4733, *12 (finding that "good cause" could not be shown where plaintiff's counsel was obligated to pursue alternative methods of service but failed to take any steps to locate defendant during a three month period). The courts in this Circuit have identified two factors that must be considered when determining whether the plaintiff has demonstrated "good cause": (1) the reasonableness and diligence of plaintiff's efforts to serve; and (2) the prejudice to defendants from the delay. *Bloomer v. City of New York,* 1994 WL 92388, *4, 1994 U.S. Dist. LEXIS 2939, *10 (E.D.N.Y.1994). *See, e.g., Gordon v. Hunt,* 116 F.R.D. 313, 318–21 (S.D.N.Y.), *aff'd,* 835 F.2d 452 (2d Cir.1987) (per curiam), *cert. denied,* 486 U.S. 1008, 108 S.Ct. 1734, 100 L.Ed.2d 198 (1988).

In the case at bar, the bankruptcy court appropriately found that the fourteen months which transpired, before Crysen attempted to perfect service of process, precluded a finding of diligence. Accordingly, the bankruptcy court found and this Court agrees that Crysen failed to satisfy the "flexible due diligence" standard and thus failed to serve E & C successfully within the appropriate time frame. Appendix at 163. *See also In re Terzian,* 75 B.R. 923 (Bankr. S.D.N.Y.1987) (finding that failure to serve creditor's complaint upon debtor warranted dismissal of complaint where six months had elapsed since issuance of summons).

Additionally, the bankruptcy court noted that Crysen had not demonstrated any "good cause," for the protracted delays. As discussed above, a *de novo* review of the record reflects a lack of diligence on behalf of the appellant, and actual prejudice suffered by appellee-defendant. Accordingly, this Court finds that a showing of "good cause" has not been made, and thus this Court affirms the bankruptcy court's decision not to excuse appellant's delays. Accordingly, this Court finds that Appellant's service by way of Letters Rogatory was untimely. Thus dismissal by the bankruptcy court was appropriate.

### D. Running of the Statute of Limitations

Appellant's contend that they commenced and served their adversary proceeding in a timely manner, based on the conclusion that the relevant statute of limitations had been tolled. The bankruptcy court however, found that the statute was not tolled, the statute of limitation had expired, and thus the second service by Letters Rogatory was completed outside the applicable statute of limitations. Upon a *de novo* review, this Court find that the bankruptcy court properly concluded that appellant's service via Letters Rogatory was barred by the running of the statute of limitations.

Bankruptcy Rule 7003 reads as follows: Rule 3 Fed.R.Civ.P. applies in adversary proceedings. Rule 3 of the Federal Rules of Civil Procedure, provides that "[a] civil action is commenced by filing a complaint with the

court." Fed.R.Civ.P. 3. Accordingly, since the adversary proceeding arises under 28 U.S.C. § 1334, the statute of limitations is tolled upon the filing of the complaint. *See Bomar v. Keyes,* 162 F.2d 136, 140–41 (2d Cir.), *cert. denied,* 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400 (1947); *Camotex,* 741 F.Supp. at 1092. *See also Salahuddin v. Harris,* 657 F.Supp. 369, 374 (S.D.N.Y.1987); *United States v. Jack Cozza, Inc.,* 106 F.R.D. 264, 268 (S.D.N.Y.1985). This tolling rule does not apply, however, to cases involving undue delays in service which have "the effect of negating the fact that a complaint was ever filed." *Camotex,* 741 F.Supp. at 1093 (quoting *Gleason v. McBride,* 869 F.2d 688, 691 (2d Cir.1989) (action properly dismissed as untimely where plaintiff waited excessive period of time after filing of original complaint to serve defendant)). It is beyond mere peradventure, that in situations constituting undue delay, where a defendant has never been served with process, no action against that defendant has been commenced and the statute of limitations continues to run. *Gleason,* 869 F.2d at 691; *Camotex,* 741 F.Supp. at 1093. *See also Derdiarian v. Futterman Corp.,* 36 F.R.D. 192, 194 (S.D.N.Y.1964) (filing of complaint commences action provided there is not undue delay). Indeed, failure of service has been held even to nullify the filing of the complaint. *Camotex,* 741 F.Supp. at 1093 (citing *Application of the Royal Bank of Canada,* 33 F.R.D. 296, 299–303 (S.D.N.Y.1963).

Crysen argues that the bankruptcy court's conclusion that the service through Letters Rogatory was untimely was erroneous and accordingly the courts order must be reversed. Crysen Brief at 33. This Court does not agree. Upon a review of the record, it is clear that there was in fact undue delay. Fourteen months passed between the time when the bankruptcy court determined that service on Epstein may not have been sufficient, thus ordering a deposition be taken, until appellant applied to the bankruptcy court for issuance of Letters Rogatory. After appellant's request was granted, another seven months passed before service was effectuated. As discussed above, appellant did not proceed with the appropriate level of diligence. Appellant claims that the 14

months were spent researching E & C's address in Switzerland and preparing the ground work to serve via Letters Rogatory. In the view of this Court such explanations do not constitute "good cause" sufficient to excuse untimely service. Although Crysen's initial attempt to serve E & C through Epstein, may have been reasonable and timely, Crysen does not offer a satisfactory justification for the fourteen month delay in proceeding with the action. *See, e.g., Gordon v. Hunt,* 116 F.R.D. 313, 325 (S.D.N.Y.), aff'd, 835 F.2d 452 (2d Cir.1987), *cert. denied,* 486 U.S. 1008, 108 S.Ct. 1734, 100 L.Ed.2d 198 (1988) (untimely service not excused for good cause where plaintiff made five attempts to serve defendant and then ceased its efforts). Thus, in view of the undue delay in service, Crysen's tarrying had "the effect of negating the fact that a complaint was ever filed." *Gleason,* 869 F.2d at 691.

█ It should be noted that the fact that E & C had actual knowledge of the action is not sufficient to deny its motion to dismiss, in that actual notice is no substitute for valid service of process. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987). *See Martin v. New York State Dep't of Mental Hygiene,* 588 F.2d 371, 373 (2d Cir.1978) (defendant's actual knowledge of an action is not sufficient to deny motion to dismiss for failure to serve); *Gordon v. Hunt,* 116 F.R.D. at 323 (delay in service not excused despite defendant's awareness that he was a named defendant).

Moreover, E & C has suffered actual prejudice as a result of Crysen's delay in service of process. *See Camotex,* 741 F.Supp. at 1094 (citing *Saylor v. Lindsley,* 71 F.R.D. 380, 385 (S.D.N.Y.1976), aff'd, 623 F.2d 230 (2d Cir.1980)). As discussed above, the death of Floersheim, and the corresponding loss of potentially relevant information, adds to E & C's potential difficulties in defending against Crysen's present claims. Additionally, it bears note, that E & C has repeatedly raised the defense of insufficiency of process.

█ Appellant also attempts to argue that the "Extension of Time" provision of the Bankruptcy Code, 11 U.S.C. § 108(c), pro-

vides for tolling of the four year statute of limitations. This assertion, however, is incorrect. The Second Circuit has held that "by its terms § 108(c) does not provide for tolling of any externally imposed time bars" while a debtor is in bankruptcy. *Aslanidis v. United States Lines,* 7 F.3d 1067, 1073 (2d Cir.1993). "The reference in § 108(c)(1) to 'suspension' of time limits clearly does not operate in itself to stop the running of a statute of limitations; rather this language merely incorporates suspensions of deadlines that are expressly provided in *other* federal or state statutes." *Id.* (emphasis in original).

Appellant's failure to proceed in a diligent manner and its undue delays in service of defendant has had the effect of negating the fact that a complaint was ever filed. *See Camotex,* 741 F.Supp. at 1092 (citing, *Gleason,* 869 F.2d at 691). Accordingly, Appellant failed to commence successfully the action within the four years following the accrual of the transaction or occurrence, mandated by the statute of limitations codified in N.Y. UCC § 2072.

Thus upon a *de novo* review this Court affirms the bankruptcy court's findings that the relevant statute of limitations had run prior to appellant's service on E & C in Switzerland by way of Letters Rogatory.

## CONCLUSION

For the reasons set forth above, the Opinion and Order of the bankruptcy court is hereby affirmed. Specifically, the bankruptcy court's dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b) and local Bankruptcy Rule 21 is affirmed, and the bankruptcy court's dismissal for failure to effectuate timely service of process, via Letters Rogatory, prior to the termination of the applicable statute of limitation is also hereby affirmed. Accordingly, this action is dismissed.

SO ORDERED.