**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SUSAN M. LIBITZKY;
MOSES LIBITZKY,

　　　　　*Plaintiffs-Appellants*,

　　v.

UNITED STATES OF AMERICA,

　　　　　*Defendant-Appellee*.

No. 23-15614

D.C. No. 3:18-cv-00792-JD

OPINION

Appeal from the United States District Court
for the Northern District of California
James Donato, District Judge, Presiding

Argued and Submitted May 13, 2024
San Francisco, California

Filed August 5, 2024

Before: Kenneth K. Lee and Daniel A. Bress, Circuit
Judges, and John R. Tunheim,* District Judge.

Opinion by Judge Lee

---

* The Honorable John R. Tunheim, United States District Judge for the
District of Minnesota, sitting by designation.

## SUMMARY**

### Tax

The panel affirmed on different grounds the district court's dismissal of taxpayers' action seeking a refund in overpayment of taxes.

Taxpayers filed a late 2011 tax return and a formal claim for a refund in overpayment of taxes in 2016. The panel held that, in compliance with 26 U.S.C. § 6511(a), the refund claim was timely because it was made within three years of filing the return. However, the refund amount is based on the look-back period under § 6511(b)(2), which limits the amount of recovery for a timely refund request to the portion of the tax paid in the three years (plus the six-month extension taxpayers were granted to file their 2011 tax return) before the refund claim was filed. Taxpayers' overpayment of taxes was deemed to have been made in April 2012, which was outside the look-back period. Accordingly, taxpayers could not recover any of their tax overpayment.

Taxpayers contended that, because the Internal Revenue Service was informally put on notice in September 2015 of their intent to use their tax overpayments, the informal claim doctrine stopped the running of the statutes of limitations. The panel held that, even if the doctrine applies, taxpayers' informal claim was untimely because in September 2015, taxpayers had not yet filed their 2011 return, and therefore

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the limitations period under § 6511(a) for a refund claim was two years after the overpayment of taxes in April 2012.

## COUNSEL

Evan J. Davis (argued), Michael Greenwade, and Cory Stigile, Hochman Salkin Toscher Perez PC, Beverly Hills, California; S. Ross Kochenderfer Jr., Law Offices of S. Ross Kochenderfer Jr. PC, Auburn, California; for Plaintiffs-Appellants.

Julie C. Avetta (argued) and Jacob E. Christensen, Attorneys; United States Department of Justice, Tax Division, Appellate Section, Washington, D.C.; David A. Hubbert, Deputy Assistant Attorney General; Ismail J. Ramsey, Of Counsel, United States Attorney, United States Department of Justice, Washington, D.C; Pamela Johann and Cynthia Stier, Assistant United States Attorneys; United States Department of Justice, Office of the United States Attorney, San Francisco, California; for Defendant-Appellee.

**OPINION**

LEE, Circuit Judge:

Missed deadlines can be costly. Because of their accountant's negligence, the Libitzkys belatedly filed their 2011 tax return in January 2016 and sought a refund of $692,690 in overpayment of taxes from previous years. Congress, however, set time limits for seeking tax credits or refunds—either two years from when the tax was paid or three years from when the tax return was filed. 26 U.S.C. § 6511(a). The Internal Revenue Service denied their request, asserting that their refund claim was not filed within § 6511(a)'s limitation period. The Libitzkys sued the IRS to collect their refund, and the district court dismissed their lawsuit.

We affirm, though on different grounds. If we treat the Libitzkys' 2011 tax return as their formal claim for a tax refund, it was timely because the refund request was filed within three years of the tax return being filed (indeed, both were filed on the same day). But the tax code imposes yet another limitation for tax refunds—a look-back period that limits the amount of recovery, even if the refund request was timely filed. 26 U.S.C. § 6511(b)(2). Under § 6511(b)(2)'s "look-back" provision, the Libitzkys' refund is limited to the amount they paid in the three-and-a-half years before they filed their refund claim. And because their overpayment is deemed to have been made in April 2012—which is more than three-and-a-half years before they filed their refund claim in January 2016—the Libitzkys cannot recover any of their tax overpayment. Having missed the look-back period by a mere three months, the Libitzkys have forfeited almost $700,000.

Trying to evade this undesired result, the Libitzkys rely on the judicially-created "informal claim doctrine" to argue that they made an informal claim by September 2015 because the IRS was put on notice of their refund claim by the Libitzkys repeatedly informing the IRS of their plan to seek credit from their tax overpayments. But that informal claim, even if valid, was untimely under the tax code. And the Libitzkys cannot mix and match the two refund claims dates to overcome their untimeliness. The statute does not allow them to rely on the January 2016 formal claim date to comply with the tax code's limitation period and then invoke the September 2015 informal claim date to satisfy the look-back period. Because Congress decided to impose strict time limits for tax refunds, we must affirm the district court's dismissal of the Libitzkys' lawsuit.

## BACKGROUND

### A. The Libitzkys' Tax Saga

Moses and Susan Libitzky are a married couple who filed their federal income tax returns jointly. Moses Libitzky owns and operates Libitzky Properties Companies. For years, the Libitzkys had a practice of overpaying their federal income tax and applying overpayment credits to their tax liability for the following year. But this process is not automatic. A taxpayer must either elect to apply the overpayment to future tax returns or request a refund from the IRS. If not, the IRS is happy to keep the taxpayer's money.

During the relevant period, the Libitzkys relied on Mark Albrecht, a tax accountant, to prepare and file their tax returns. But Albrecht suffered from a substance abuse disorder that interfered with his professional obligations, including meeting filing deadlines.

### 1. 2011 Tax Year

In April 2012—when taxes for 2011 were due—the Libitzkys had tax credits of $1,185,332 with the IRS. Despite these credits, the Libitzkys filed a Form 4868, seeking a six-month extension to file their 2011 return and made an additional $310,000 payment towards their 2011 taxes. The IRS granted their extension request as a matter of course, without so much as inspecting the details of the form. Albrecht, however, did not file the Libitzkys' tax return by the extended deadline.

### 2. 2012 Tax Year

In 2012—having still not filed a return for 2011—the Libitzkys made an additional $455,000 in tax payments to the IRS. And in April 2013, shortly before 2012 taxes were due, the Libitzkys once again filed a Form 4868 extension request, which the IRS granted. On that extension request, the Libitzkys estimated their 2012 tax liability at $511,471 and estimated their total tax payments at $1,149,068.

In early 2013, the IRS sent the Libitzkys a CP59 notice, informing them that they had never filed a return for the 2011 tax year. Then, in June 2013, the IRS sent them a CP518 letter, a final reminder that it had not received their 2011 tax return. Both notices warned the Libitzkys that they risked losing their tax refund if they failed to promptly file their 2011 return. The Libitzkys did not respond to these notices, nor did they timely file their 2012 return.

### 3. 2013 Tax Year

The Libitzkys—having still not filed a return for 2011 or 2012—filed their 2013 return in October 2014. In December 2014, the IRS responded to the 2013 return with a CP23 discretionary notice, advising the couple that they owed an

additional $577,924.18 for the 2013 tax year. At this point, the Libitzkys finally realized that their 2011 and 2012 tax returns had not been filed. The Libitzkys then forwarded the CP23 notice to Albrecht.

### 4. The Libitzkys belatedly seek to apply their tax overpayments.

Albrecht responded to the CP23 notice by a letter and phone call in February 2015. In his letter, Albrecht claimed that the CP23 notice failed to recognize $645,119 of overpaid 2012 income taxes that should have been applied to the Libitzkys' 2013 tax liability. Along with the letter, Albrecht also finally submitted the Libitzkys' 2012 tax return, which stated that the couple had $1,147,690 in tax credit for 2012. Although the 2012 return did not differentiate between payments made in 2012 and the refund credits claimed from overpayments in 2011, the IRS's response to the return shows that the agency understood that the Libitzkys were claiming credits for their 2011 overpayments. The IRS's response also reminded the Libitzkys that the agency had still not received their 2011 return.

During his February 2015 phone call with the IRS, Albrecht stated that the Libitzkys planned to claim a refund for 2011 overpayments. The IRS agent's written notes state that Libitzkys had tax credits "sitting on 2011 and 2012 but no returns have been filed." But because Albrecht did not have power of attorney to discuss the Libitzkys' taxes, the conversation was limited in scope. The IRS thus instructed Albrecht to contact them again when he had power of attorney.

About five months later, Albrecht called the IRS with power of attorney. The IRS informed Albrecht that there was a tax delinquency investigation for the Libitzkys' 2011

return, which still had not been filed. The IRS call record reflects that Albrecht once again advised the IRS that the Libitzkys "would have carried forward credit that would eliminate the balances on the account." Following the phone call, Albrecht still did not file a 2011 return.

On August 31, 2015, the IRS issued a CP90 notice to the Libitzkys informing them of its intent to seize their assets for an amount due of $616,497.21. Albrecht responded on September 16 stating that the Libitzkys would file a 2011 return by September 23 and that the "[r]efund return will full pay the balance due." The IRS agent's notes from the call "indicate[] that the 'power of attorney states carry overs on 2011 and 2012 would full pay 2013.'" Despite promising the IRS that the Libitzkys' 2011 return would be filed by September 23, 2015, Albrecht failed to do so.

Late December 2015, the agency directed IRS revenue agent Monica McKenna to collect on the delinquent 2011 tax return. Agent McKenna noted that the Libitzkys' IRS account had credits of $1,495,332 but also had balances due for 2012 and 2013 and a delinquent 2011 return.

McKenna visited the Libitzky Properties office on January 20, 2016 and met with Albrecht and Moses Libitzky. Later that day, the Libitzkys signed a return for 2011 and faxed it to McKenna. At long last, the Libitzkys had finally filed their 2011 return and, along with it, made a formal refund claim for their 2011 overpayment.

The filing of the 2011 return satisfied a little over $610,000 in taxes and interest owed by the Libitzkys. But given the Libitzkys' large overpayments made over the years, they had an overpaid balance of $692,690. Relevant to this case, the parties agree that the overpayment is deemed

to have been made on April 17, 2012, the due date of the 2011 tax payment.

\* \* \* \*

In sum, there are three key dates to keep in mind. The Libitzkys' 2011 taxes are considered to have been paid on **April 17, 2012**. The Libitzkys argue that Albrecht's communications with the IRS from **February 2015 to September 2015** repeatedly informed the agency that the Libitzkys intended to claim credit for overpayment of their 2011 taxes. And the Libitzkys filed both their 2011 tax return and their formal claim for a refund on **January 20, 2016**.

## B. Procedural History

The Libitzkys filed a complaint against the United States in February 2018 for a refund of their 2011 overpayment.[1] The parties cross-moved for summary judgment, which the district court denied. The district court then held a two-day bench trial and dismissed the case for lack of jurisdiction under 26 U.S.C. § 6511(b)(2)(A), finding that the Libitzkys failed to make an adequate and timely refund claim because the Libitzkys' communications with the IRS did not amount

---

[1] The United States is generally immune from suit and can be sued only if it has waived its sovereign immunity. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). The federal government waives its sovereign immunity for tax refund lawsuits if the taxpayer has complied with certain statutory and regulatory requirements, some of which are at issue in this case. *See* 26 U.S.C. § 7422(a). Thus, if the Libitzkys have not met these requirements, then the United States has not waived its sovereign immunity and we must dismiss the lawsuit for lack of jurisdiction. *See Orff v. United States*, 358 F.3d 1137, 1142 (9th Cir. 2004) ("Any claim for which sovereign immunity has not been waived must be dismissed for lack of jurisdiction.").

to an informal claim for refund. In making this determination, the court assumed that a three-year limitation period applied and did not directly address whether a formal claim had been made in January 2016.

## DISCUSSION

We review *de novo* a district court's decision to dismiss for lack of subject matter jurisdiction and the underlying factual findings for clear error. *Rattlesnake Coalition v. EPA*, 509 F.3d 1095, 1100 (9th Cir. 2007).

### A. The tax code imposes two sets of time limits for seeking tax refunds.

When taxpayers seek a tax credit or refund from the IRS, they must comply with two interrelated time limitation provisions—the "limitation period" and the "look back period," both of which are jurisdictional. *Zeier v. IRS*, 80 F.3d 1360, 1363–64 (9th Cir. 1996) (holding that the requirements in 26 U.S.C. § 6511(a), (b) are jurisdictional).

The taxpayer must first comply with what we will call the "limitation period" requirement, which sets a deadline by which the taxpayer must make a refund claim. The limitation period is like a statute of limitation: if a taxpayer does not file a claim within the prescribed time frame, he cannot receive any refund—period.

The relevant provision setting the period of limitation on filing a claim—found in 26 U.S.C. § 6511(a)—reads as follows:

> [A refund claim] shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods

expires the later, or if no return was filed by
the taxpayer, within 2 years from the time the
tax was paid.

The statute then provides that no "refund shall be allowed or
made after the expiration of the period of limitation
prescribed in subsection (a)."   26 U.S.C. § 6511(b)(1).
"Read together, the import of these sections is clear: unless
a claim for refund of a tax has been filed within the time
limits imposed by § 6511(a), a suit for refund . . . may not be
maintained in any court."   *United States v. Clintwood
Elkhorn Mining Co.*, 553 U.S. 1, 5 (2008) (quoting *United
States v. Dalm*, 494 U.S. 596, 602 (1990)).

But which limitation period applies is a bit more
complicated, as § 6511(a) sets out different scenarios:

> (1)  If the taxpayer files a tax return, the
> statute is more lenient.  The taxpayer can
> either file the refund claim within **three
> years** from the time that **their return was
> filed** or within **two years** from the time
> that the **taxes were paid**, whichever is
> more forgiving to the taxpayer.

> (2)  If the taxpayer failed to file a return, then
> the refund claim must be filed within **two
> years** from the time that the **taxes were
> paid**.

But this "limitation period" is just the first hurdle a
taxpayer must jump through to sue for a refund.  Even if a
taxpayer makes a timely refund claim, the amount he
receives will depend on § 6511(b)(2)'s applicable "look-
back" provision.   Section 6511(b)(2)—titled "Limit on

amount of credit or refund"—limits a taxpayer's ability to reach back into the past to claim a refund of tax overpayments. For example, a taxpayer may have timely submitted a refund claim, but he may receive only a portion—or even none—of the overpayment amount if, for instance, the overpayment occurred beyond the look-back period.

Section 6511(b)(2) provides two potentially applicable look-back periods that reference and rely on the time periods set forth in § 6511(a)'s limitation period provision:

> (1) If a taxpayer filed a return and then submitted a refund claim within § 6511(a)'s three-year period, "the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to **3 years plus the period of any extension of time for filing the return**." 26 U.S.C. § 6511(b)(2)(A) (emphasis added).

> (2) If a refund claim was not made within the three years after the filing of a return—because either no return was filed or because § 6511(a)'s first two-year limitation period is more forgiving than its three-year limitation period—"the amount of the credit or refund shall not exceed the portion of the tax paid during the **2 years** immediately preceding the filing of the claim." 26 U.S.C. § 6511(b)(2)(B) (emphasis added).

The look-back period of § 6511(b)(2) thus depends on which limitation period applies under § 6511(a). If the three-year limitation period applies, then the look-back period is also three years, plus the period of any extension that was granted for filing the return. If the three-year limitation period does not apply, then the look-back period is two years.

In short, both the limitation period and the look-back period are shorter and less generous for taxpayers who do not timely file their tax returns. Congress apparently justified this scheme to favor those who file tax returns, given that our "tax system [is] based on self-reporting." *United States v. Clarke*, 573 U.S. 248, 254 (2014).

**B. The Libitzkys made a timely *formal* refund claim but § 6511(b)(2)'s look-back provision bars recovery.**

Now that we walked through the statutory framework, we apply these provisions to the facts here. As noted, the "limitation period provision—§ 6511(a)—requires taxpayers to file a refund claim "within 3 years from the time the [tax] return was filed . . ." 26 U.S.C. § 6511(a). But if the taxpayers have not filed a return, then they have "2 years from the time the tax was paid" to make a refund claim. *Id*.

The three-year period limitation applies because the Libitzkys filed a formal refund claim in January 2016. The Libitzkys submitted a refund claim when they filed their 2011 tax return in January 2016 and formally requested a refund of their overpayments. Thus, the January 2016 formal claim satisfies § 6511(a)'s three-year limitation period, as the formal refund claim was filed within three years of the tax return being filed. Indeed, the formal claim was included in the Libitzkys' 2011 tax return. And despite

the lengthy delay in filing the return, under § 6511(a), the formal refund claim is still considered timely even if the tax return is late. *See Omohundro v. United States*, 300 F.3d 1065, 1069 (9th Cir. 2002).

But the Libitzkys' January 2016 formal claim does not get them a refund because it hits a snag under the look-back provision. As discussed, the look-back provision states that the "amount of . . refund shall not exceed the **portion of the tax paid**" within the relevant look-back period. § 6511(b)(2) (emphasis added). To determine whether the two-year or three-year look-back period applies, we look at which limitation period applied under § 6511(a). *Id.* Because the three-year period applied under the limitation period here, § 6511(a), the same three-year period applies under the look-back period, § 6511(b)(2)(A), plus any extension period granted to file the tax return. *Id.* And because the Libitzkys had received a six-month extension to file their 2011 return, they are entitled to a three-and-a-half-year look-back period for their formal claim under § 6511(b)(2)(A).

Recall the key operative dates here: the Libitzkys formally submitted their refund claim on January 20, 2016 when they finally submitted their 2011 tax return. So, to recover their overpayment, they must have made the tax overpayments within the three and a half years from that date. The Libitzkys, however, are deemed to have made the overpayments on April 17, 2012, the day that their 2011 tax return was due. And because April 17, 2012 is more than three and a half years before January 20, 2016, the Libitzkys missed the look-back period by a little over three months and cannot recover any of the $692,690 in tax overpayments.

On appeal, the Libitzkys do not seriously contest that the look-back period bars them from recovering any of their overpayments based on their January 2016 formal claim. Rather, they mainly hinge their argument on the informal claim doctrine, which we address next.

**C. Even if the Libitzkys' September 2015 communications are considered an informal refund claim, it was not timely.**

The Libitzkys try to sidestep the statutory time limitations by relying on the "informal claim doctrine," a judicially-created exception to the tax code's timeliness requirements. Under this doctrine, an informal claim may be technically deficient but it nevertheless stops the running of the statutes of limitations. *Comm'r of Internal Revenue v. Ewing*, 439 F.3d 1009, 1015 (9th Cir. 2006), *superseded by statute on other grounds as recognized in Christensen v. Comm'r of Internal Revenue*, 523 F.3d 957, 959 (9th Cir. 2008); *see also United States v. Kales*, 314 U.S. 186 (1941). The informal claim "doctrine is predicated on an expectation that these formal deficiencies will at some point be corrected." *PALA, Inc. Emps. Profit Sharing Plan and Tr. Agreement v. United States*, 234 F.3d 873, 879 (5th Cir. 2000). Deficiencies are corrected by the filing of a formal refund claim. *See* 26 C.F.R. § 301.64202-2(b) (setting out the requirements for a refund claim).

According to the Libitzkys, they submitted an informal refund claim by at least September 2015 because they had sufficiently alerted the IRS of their intent to use their tax overpayments. The Libitzkys reason that if September 2015 is considered the informal refund claim date, then their overpayment of taxes, made in April 2012, occurred within the three and a half year look-back period.

But even assuming that the Libitzkys made a valid informal claim by September 2015, their argument still fails because their informal claim was untimely. For the Libitzkys' informal refund claim, our analysis begins by looking at the limitation period under § 6511(a) and determining whether the two-year or three-year limitation period applies.

The Libitzkys maintain that their informal claim was submitted, at the latest, by September 2015. But at that time, the Libitzkys had not yet filed a return for the 2011 tax year; it was filed in January 2016. Section 6511(a) states that if a taxpayer has *not* filed a return, then he has "2 years from the time the tax was paid" to make a refund claim. 26 U.S.C. § 6511(a). Because the Libitzkys had not filed their 2011 return when they submitted their informal claim in September 2015, § 6511(a)'s two-year limitation period applies.

The Libitzkys disagree and argue that their informal claim is entitled to the three-year limitation period because they filed a valid 2011 return in January 2016. They effectively contend that a later-filed tax return changes the applicable limitation period for their prior-filed informal claim. In other words, they argue that their September 2015 informal claim merges with the January 2016 formal claim—the date the 2011 return was filed—such that the three-year limitation period applies. This argument misconstrues the statute's text and the purpose of the informal claim doctrine.

Section 6511(a) dictates that, when a tax return has been filed, the refund claim "shall be filed by the taxpayer **within 3 years from the time the return was filed**." 26 U.S.C. § 6511(a) (emphasis added). When the Libitzkys filed their

informal claim in 2015, they had not yet filed a 2011 return. Thus, "there [was] no date from which to measure the [limitation] period described in § 6511(a)." *See Comm'r of Internal Revenue v. Lundy*, 516 U.S. 235, 243 (1996) (holding that § 6511(b)(2)'s two-year look-back period applies to a refund claim when the taxpayer has not yet filed a return). The Libitzkys cannot use their return—filed in January 2016—to change the limitation period that applies to their informal claim, which was made in 2015.

Holding the Libitzkys' informal claim to the two-year limitation period furthers the purpose of the informal claim doctrine. The informal claim doctrine "addresses whether an informal claim for a refund should stop the running of the statute of limitations for a refund claim." *Ewing*, 439 F.3d at 1015. Thus, to stop the running of the statute of limitations, the informal claim must have been filed within that statute of limitations

Contrary to the Libitzkys' argument, our decision in *Omohundro* does not compel a different result. In *Omohundro*, we held that under § 6511(a), "a taxpayer's claim for credit or a refund is timely if it is filed within three years from the date his income tax return is filed, regardless of when the return is filed." 300 F.3d at 1069. Under *Omohundro*, the Libitzkys' informal claim would have been timely under § 6511(a) if it was filed within three years *after* January 2016, the date the 2011 tax return was filed. But because the Libitzkys made their informal claim *before* they

filed their 2011 tax return, *Omohundro* is of little consequence here.[2]

Because we hold that the two-year limitation period applies under § 6511(a), any informal claim must have been lodged by April 2014 (*i.e.*, two years after the overpayment of taxes in April 2012). Almost all the communications with the IRS cited by Libitzkys occurred between February and September 2015. The only potentially relevant pre-April 2014 communication is the Libitzkys' Form 4868 request for an extension that was filed on April 15, 2013. But, as the district court noted, the IRS grants extension requests as a matter of course and does not review them for substance.

We distinguish this case from the Eighth Circuit's decision in *Kaffenberger v. United States*, 314 F.3d 944 (8th Cir. 2003), where a Form 4868 constituted an informal claim because the taxpayers "notif[ied] the IRS that they wanted" a credit and the agency "knew" about the refund entitlement. *Id.* at 956. While the *Kaffenberger* taxpayers' actions, in total, placed the agency on notice that an informal claim was being made, the Libitzkys' communication with the IRS here is more opaque. The Libitzkys' extension request thus did not put the IRS on sufficient notice of their impending refund claim for 2011 and does not constitute an informal claim. *See Kales*, 314 U.S. at 194–95 (explaining that the

---

[2] In their supplemental brief, the Libitzkys cite *United States v. Memphis Cotton Oil Co.*, 288 U.S. 62 (1933) to argue that the informal claim merges with the formal claim such that the three-and-a-half-year look-back period runs from the September 2015 informal claim date. Not so. That case addressed a timely but defective claim that was cured by an untimely but proper claim, *i.e.*, it merely held that deficiencies in a timely claim can be corrected after the statute of limitation has expired. *Id.* at 64, 71. In contrast, here we have the reverse scenario of the Libitzkys trying to cure an untimely (informal) claim with a timely claim.

taxpayer's correspondence "state[d] correlative alternative rights on which the taxpayer relied" and thus constituted sufficient notice of an informal claim).

In sum, the Libitzkys try to mix and match the formal claim and informal claim dates to comply with § 6511(a)'s applicable limitation period and § 6511(b)(2)'s look-back requirements.    The Libitzkys' argument is as follows: Section 6511(a)'s three-year limitation period applies because they filed their *formal claim* and 2011 return on January 20, 2016.  And they meet § 6511(b)'s look-back period because they filed their *informal claim* in September 2015, which is within three-and-a-half years of April 2012, when their overpayments were deemed paid.  And so, the argument goes, if the Libitzkys can use the formal claim date to satisfy § 6511(a)'s limitation period and the informal claim date to satisfy § 6511(b)(2)'s look-back period, then they would have a right to recover their overpayments.

But § 6511's requirements may not be divided and conquered.    The limitation and look-back periods of §§ 6511(a) and (b)(2) are interdependent, as evidenced by the various timing cross-references in the statute.    The Libitzkys' attempt to cherry-pick different claim dates—the formal claim date for § 6511(a) and then the informal claim date for § 6511(b)(2)—fails because § 6511(b)'s look-back period is explicitly determined by § 6511(a)'s limitation period.  Specifically relevant here, § 6511(a) requires that, for the three-and-a-half year look-back period to apply, the refund claim had to be filed "within 3 years from the time the return was filed."  It is impossible for the Libitzkys' informal claim to satisfy that requirement because it was filed *before* the return.  Thus, the two-year limitation period applies to the informal claim, and the Libitzkys cannot recover.

\*   \*   \*   \*

This is an unfortunate case with a potentially unjust outcome for the Libitzkys. Everyone agrees that the Libitzkys overpaid their taxes by almost $700,000. Their practice of overpaying their taxes effectively gave the United States an interest-free loan. The Libitzkys' accountant, whom they relied on to file their tax returns, failed to meet critical filing deadlines. And with this decision, they cannot sue to recover their overpayments.

But we are bound by the statutory language enacted by Congress. Perhaps Congress stacked the deck in favor of the IRS, but it chose to have strict limitation and look-back periods to encourage the timely submission of tax returns and refund claims. Under the tax code, we must affirm the dismissal of the Libitzkys' lawsuit for lack of jurisdiction.

**AFFIRMED.**